## WRIGHT and Another *v.* CRUMP and Others.

PRINCIPAL AND SURETY.—VENDOR AND PURCHASER.—A executed to B a
mortgage upon certain real estate to secure a note of $300. On the same
day C also executed to B a mortgage to secure the payment. of A's note to
B for $300, and also to secure a note of $169 made by C to B. Suit by B
to foreclose both mortgages. D, who claimed, as the vendee of C, the
lands mortgaged by him to B, filed his cross-complaint, alleging that the
mortgage made by C was, as to the $300 note, only collateral to the mortgage of A; that the mortgage of A was the primary security, and asking

that the land mortgaged by A, and all other property of his subject to execution, might be exhausted before resorting to the land mortgaged by C. A also filed a cross-complaint against C and D, alleging that C was, at the time of the execution of the mortgage, indebted to him, A, in the sum of $200, and in consideration of that indebtedness assumed to pay that amount of the $300 note to B, and gave said mortgage to secure the payment thereof, and asking that as to said sum of $200 the mortgage of C might be decreed to be the primary security. A demurrer was sustained to this cross-complaint.

*Held*, that it is a well settled principle of equity jurisprudence, which is expressly recognized by our statute, that in cases of principal and surety, both being before the court, the creditor may be compelled to first exhaust the property of the principal.

*Held*, also, that the court erred in sustaining the demurrer to the cross-complaint of A.

*Held*, also, that D, having purchased subject to the mortgage made by C, must be held to have taken the lands subject also to the intervening equities between A and C.

APPEAL from the *Bartholomew* Common Pleas.

ELLIOTT, J.—This is a suit by *Crump*, one of the appellees, to foreclose two mortgages. The complaint, as originally filed, contains two paragraphs. The first paragraph is on a mortgage executed to *Crump* on the 24th day of *January*, 1862, on a lot in *Burnsville*, in *Bartholomew* county, by *John H. Wright* and *Ann M. Wright*, his wife, the appellants, to secure a note for $300, executed by said *John H.*, on the same day, and payable on the 1st day of *March*, 1863. The second paragraph is on a mortgage executed by *Ransom R. Hook* to said *Crump*, on a tract of land in said county, on the 24th of *January*, 1862, to secure a note executed by said *Hook* on the same day, and also payable on the 1st day of *March*, 1863, for the sum of $169, and also to secure the payment of the said note for $300, executed by said *Wright* to said *Crump*, referred to in the first paragraph of the complaint. Both mortgages were duly acknowledged and recorded. The complaint was subsequently amended by adding an additional paragraph on the mortgage executed by *Hook*, praying a foreclosure thereof for the amount of both the notes. A question is discussed by the appellant's counsel as to the effect of this

amendment, which may properly be disposed of at this point in the examination of the case. It is insisted that the amendment is a new and substituted complaint, and therefore supersedes the former complaint, and that the mortgage executed by *Wright* and wife was thereby abandoned, and was no longer in the case or before the court.

It is not easy to perceive what office this third paragraph or amendment to the complaint was intended, by the pleader, to fill. There is, to be sure, a slight difference in language between it and the second paragraph of the original complaint, but we see no difference in their legal effect. Still we do not think the record shows that it was intended as a substitute for the original. It makes both *Wright* and *Hook* defendants, and in its commencement says: "That, by way of amendment to his original complaint herein, filed *December* 12th, 1863, he says," &c. It does not seem to have been treated as the only complaint, after it was filed, either by the court or parties, and should, we think, be regarded simply as an additional paragraph.

Subsequent to the filing of the amendment to the complaint, *Matthias Hook*, claiming as the purchaser of the equity of redemption from *Ransom Hook*, of the land described in the mortgage of the latter to *Crump*, was admitted by the court as a party defendant, and thereupon filed an answer, first, in denial of the complaint, and second, in the nature of a cross-complaint against the defendant *Wright*, alleging therein that he is the owner of the land described in the mortgage of *Ransom Hook* to the plaintiff, by purchase and a conveyance thereof to him by said *Ransom*, after the execution of the mortgage to the plaintiff, and avers "that, by agreement of said mortgagors and mortgagee, said mortgage of said *Wright* and wife to the plaintiff was given to secure, primarily, the payment of the sum of $300, therein specified; and that, as to said sum, the mortgage of said *Hook* was only secondary and collateral and said *Ransom* was not to be liable to the payment of any part of said sum, nor was the real estate so mortgaged

to be liable to sale to pay any part thereof, until the real estate mortgaged by said *Wright* and wife was exhausted, and said plaintiffs should have been unable to collect said sum, in full, from said *Wright*," and prayed that, in rendering the decree of foreclosure of said mortgages, the same should be so rendered as to require the plaintiff first to exhaust the property mortgaged by said *Wright* and wife, and all the remaining property of said *Wright* subject to execution, before proceeding to sell the land mortgaged by said *Ransom.*

*Wright* filed an answer to the cross-complaint of *Matthias Hook:* 1st. A general denial. 2d. Also in the nature of a cross-complaint as follows: "The defendant for further partial answer says, it is true he executed the note in complaint for $300, but this defendant being bail on certain judgments against said *Hook,* the mortgagor, and security on certain claims executed by him to others, and contemplating becoming indebted to this defendant, and being largely indebted to this defendant, to-wit, the amount of an account due by said *Hook* to the defendant, for $70 64, a part of which accrued afterward, and part due at the time, a copy of which is filed herewith." The account, or bill of particulars filed, amounts to $104 27, of which items amounting to $22 50 are dated in *March* and *April,* after the execution of the mortgages, and the residue of the account bears date prior to the execution of the mortgages. The account is credited with $33 63, *April* 7th, 1862, leaving unpaid $70 64. The answer alleged further indebtedness by said *Ransom Hook* to *Wright,* by a note dated *July* 20th, 1861, due *December* 25th of the same year, for $20, a copy of which was also filed. It further alleges the payment of certain judgments rendered by justices of the peace against said *Ransom Hook,* on some of which *Wright* was replevin bail, and in others the surety on the notes upon which they were rendered. Transcripts of these judgments and proceedings are filed with the answer, by which it is shown that *Wright* had become liable on them either as surety on the notes, or

as replevin bail on the judgments, prior to the execution of said mortgages. The payments thus made, including the account and note due to *Wright*, amount, as is alleged, to the aggregate sum of $200. The answer further alleges that, in consideration of said indebtedness to *Wright*, and of his liability to others, said *Ransom* agreed with *Wright* "to assume and pay off said sum of $200 of said note, and he did assume the payment of said sum to plaintiff, and became liable therefor. And the balance of said note this defendant is ready and willing to pay. And, with a view to the security of said sum of money, and the payment thereof, and as evidence of his liability therefor, said *Ransom R. Hook* executed the mortgage herein, and this defendant is willing to charge his said property with said balance of said $300, to-wit, $100 and interest thereon. This defendant says further, that said *Matthias Hook* is not an innocent purchaser herein, as said land was conveyed to him without consideration, and the same was made by said *Ransom* and received by said *Matthias* with the purpose and intention to cheat, hinder, delay and defraud the creditors of said *Ransom Hook*, and especially this defendant. That said defendant *Ransom Hook* was largely indebted, to wit, to *Abraham R. Clark*, in the sum of $30; to *John Kelly*, in the sum of $25; *John M. Braden* and another in the sum of $30, and with a view to cheat and defraud said creditors and this defendant, said deed was executed to and received by *Matthias Hook*." The answer concludes with a prayer that the land mortgaged by *Ransom R. Hook* be first sold to satisfy said sum of $200 and interest, &c.

To this paragraph of *Wright's* answer, *Matthias Hook* and the plaintiff filed separate demurrers, which the court sustained, and *Wright* excepted.

On the final hearing, the court rendered a judgment against *Wright* for the amount of the $300 note and interest, and a decree of foreclosure of both mortgages, but requiring that the lot mortgaged by *Wright*, and all his other property subject to execution, should be first sold and

exhausted before any part of said sum should be levied of the land mortgaged·by *Ransom Hook.*

The ruling of .the court below, in sustaining the demurrers to the second paragraph of *Wright's* answer, presents the principal question here.  Did the court err in sustaining the demurrers?

In the discussion of .this question, it is not necessary that we should notice the·demurrers separately, as what may be said in reference to the one, will, in the main, apply with equal force to the other.  Our attention will be directed more particularly to the demurrer of *Hook.*

It is a well settled principle of equity jurisprudence, and expressly recognized by statute, that, in cases of principal and surety, both being before the court, the creditor may be compelled to first exhaust the property of the principal before resorting to that of the surety.  Indeed, both *Wright* and *Hook* seek, by their pleadings, to apply the principle in the case before us.  The latter, claiming to be the purchaser of the equity of redemption of the land mortgaged by *Ransom Hook,* alleges that, by agreement of the parties, the mortgage executed by the latter was only collateral to that executed by *Wright,* who, it is alleged, is the principal debtor, as .to the note for $300 executed by him; and that the mortgage executed by *Ransom Hook* was only a secondary security for *Wright's* debt, and, therefore, claiming that the property mortgaged by the latter for the same debt, as well as all his other property subject to execution, should be first exhausted before resorting to the land mortgaged by *Ransom Hook.*  And, if the facts alleged by him are true, the position, at least as to the lot mortgaged by *Wright,* is correct.  But *Wright,* in his answer under consideration, denies the truth of the cross-complaint to which it is filed, as to the sum of $200, as to which he avers that, in consideration of the indebtedness of *Ransom Hook* to him personally, and of his liability on the judgments set up in the answer, it was expressly agreed between the parties that said *Hook* should pay, and that he did, in fact, assume to

pay said sum of $200 of the $300 note of *Wright* to the plaintiff; and that, for the purpose of securing said sum of $200, said *Hook* included the note of *Wright* for $300 in his mortgage to the plaintiff, and that it was not so included merely as a collateral security for *Wright's* debt to the plaintiff, as alleged by *Hook* in his cross-complaint. Now, if the facts thus set up by *Wright* are true, as the demurrer admits them to be, then $200 of the *Wright* note is, in fact, the debt of *Ransom Hook,* and, in equity at least, he must be regarded as the principal debtor, and *Wright* in the light of his surety.

But it is urged in argument that, as both mortgages were executed on the same day, they should be taken and construed together as one transaction, and that, viewing them in that light, *Matthias Hook* had the right to regard *Ransom's* mortgage as only collateral to the mortgage of *Wright,* he having no actual notice of the alleged agreement set up in the answer, that *Ransom Hook* was to pay $200 of the *Wright* note, and having purchased the land without such notice, he is entitled to be protected as an innocent purchaser.

A sufficient answer to this position is presented in the fact that *Matthias Hook* had notice of *Ransom's* mortgage, and purchased the land subject to it, and to all its legal incidents. There is nothing in the mortgage itself that he could rely upon as evidence that the mortgage was only a collateral security. The terms of its condition are, that *Ransom Hook* "shall pay, or cause to be paid, to said *Crump* the sum of $469, on or before the 1st day of *March,* 1863," a part of which is evidenced by the note of *Hook,* and the residue by the note of *Wright,* which are described in the mortgage.

Perhaps the fact that it secures a note executed by *Wright* alone, would raise a *prima facie* presumption that it is his individual debt, but it would not be conclusive of that fact. The purpose and the consideration inducing the execution of the mortgage by *Hook,* to secure *Wright's* note, are

susceptible of parol proof, as between him and *Wright*, and whatever the intervening equities between them were at the time *Matthias Hook* purchased, he certainly took the title subject to them.

Nothing appears in the facts of the case, as presented by the pleadings, from which he can claim to be placed in a better condition than that occupied by his vendor at the time of his purchase. On this question *Williams* v. *Perry*, 20 Ind., 437, seems to be directly in point. In that case, *Dickison, Crim, Pierson, Hazlett* and *Bowen*, jointly purchased a lot in *Anderson*, received a deed of conveyance therefor, and executed their joint notes and mortgage on the lot to secure the purchase money. They subsequently made a parol partition of the lot, dividing it into four equal parts, assigning to *Crim* and *Hazlett*, jointly, one part, and to each of the others a separate part. They also agreed to execute quit-claim deeds to each other for their respective parcels so assigned. *Pierson* took possession of his part and erected a brick building on it, and then sold it to *Williams*, who paid him the purchase money in full. The legal title still remaining in all the purchasers, they joined in a deed of conveyance to *Williams* for the part of the lot purchased by him of *Pierson*. *Pierson* paid nothing on the original purchase money; three-fourths of it was, however, paid by the other parties. The complaint was filed to foreclose the mortgage for the remaining fourth of the purchase money. On the final hearing, the court decreed that the part of the lot set off to *Pierson* should be first sold. *Williams* appealed. DAVISON, J., in an opinion affirming the case, says: "The several owners of the residue of the lot having each paid one-fourth of the purchase money, the remaining one-fourth was, in equity, the debt of *Pierson*, and, as his debt, it was properly chargeable on the portion set off to him." It is further said, as to *Williams*, that "The mortgage being duly on record, he must be presumed to have had notice of the lien." It was not pretended in the case that *Williams* had notice that *Pierson* had paid no

part of the purchase money, but the decision is evidently based on the principle that, having notice of the mortgage, he must be regarded as purchasing subject to the intervening equities arising under it.

But, in the case at bar, *Matthias Hook* cannot be regarded as an innocent purchaser for a valuable consideration. The answer, to which the demurrer was sustained, expressly charges that the land was conveyed to him without consideration, and that the conveyance was made by *Ransom,* and received by him, for the purpose of hindering, delaying and defrauding the creditors of said *Ransom.* This fact is clearly well pleaded, and is therefore admitted by the demurrer.

For the purposes, then, of this decision, *Matthias Hook* must be regarded as a fraudulent purchaser, and without equity. It seems to us clear, that the court below erred in sustaining the demurrers to *Wright's* answer.

The judgment is, in all things, reversed, with costs against *Matthias Hook,* and the cause remanded to the court below with instructions to overrule the demurrers to the second paragraph of the answer of *Wright* to the cross-complaint of *Matthias Hook.*

*F. T. Hord,* for appellants.

*R. Hill* and *J. M. Rogers,* for appellees.